IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 27, 2015 Session

**CHARLOTTE D. CULPEPPER v. BRANDON K. CULPEPPER**

**Appeal from the Circuit Court for Hamilton County**
**No. 12D2570    W. Neil Thomas, III, Judge**

_____

**No. E2014-00815-COA-R3-CV-FILED-NOVEMBER 4, 2015**

_____

This appeal arises from an action for divorce wherein the trial court ordered the parties' marital debt to be divided in a nearly equal fashion. The trial court awarded child support to the wife, who was designated primary residential parent and who received a greater share of co-parenting time with the children. The court also awarded child support retroactive to the date of the filing of the divorce complaint. In addition, the court allocated both federal tax exemptions for the children to the wife. The husband has appealed. We affirm the trial court's judgment with a slight modification in the amount of the child support arrearage award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Brandon K. Culpepper.

Angela C. Larkins, Chattanooga, Tennessee, for the appellee, Charlotte D. Culpepper.

**OPINION**

I.  Factual and Procedural Background

The plaintiff, Charlotte D. Culpepper ("Wife"), filed a complaint for divorce against the defendant, Brandon K. Culpepper ("Husband"), on December 19, 2012. The parties' marriage commenced in July 1999, and their separation occurred in July 2012.

Two minor children were born to the marriage, who were ages eleven and seven at the time of trial.

The parties entered into mediation during the pendency of the action and agreed upon a permanent parenting plan, which designated Wife as primary residential parent. Pursuant to their agreement, Wife was awarded 229 days and Husband was awarded 136 days of co-parenting time with the children each year. The parties did not agree, however, regarding an equitable distribution of the marital property and debt.

The trial court conducted a bench trial on January 7, 2014. The parties stipulated that they agreed to be bound by the mediated parenting plan. The proof demonstrated that at the time of the parties' separation, Wife was employed with Unum and earned $51,000 per year. By the time of trial, Wife had been employed at Complete Benefit Alliance for five months, earning $71,000 per year. Husband was employed by EPB and earned approximately $78,400 per year. Wife sought an award of child support retroactive to the date she filed the complaint, asserting that Husband did not pay any child support prior to trial. The parties also presented proof regarding their assets and liabilities, as well as their relative fault in the dissolution of the marriage.

At the conclusion of the proof, the trial court adopted and approved the parties' agreed permanent parenting plan, finding it to be in the children's best interest. The court awarded each party the personalty currently in his or her possession, with the exception of a few disputed items. The court further ordered that the marital residence be sold and any deficiency or proceeds be divided equally by the parties. Other remaining assets, such as bank accounts, were divided in a nearly equal fashion. The divorce in these proceedings was awarded to Husband.

The trial court then divided the parties' marital debts relatively equally, with the exception that the court initially assessed the outstanding balance of approximately $13,000 on the Elan credit card solely to Wife. As the trial court was announcing its ruling from the bench, Wife's counsel reminded the court that Wife had testified that the Elan debt and other credit card debts were incurred during the marriage for the benefit of the family. Husband's counsel objected, asserting that Husband said he did not know the Elan debt existed. The trial court then stated that there was a "presumption that money – generally speaking, money used during the marriage is used for the family." Husband's counsel responded, "That's conceded, Your Honor, yes." The court proceeded to divide the marital credit card debt, including Elan, in an approximately equal fashion.

With regard to child support, the trial court stated that Wife would be awarded child support from the date of filing through the date of trial. The court further explained that retroactive support from the date of trial back to the date of the complaint's filing

would be based on the number of days awarded each party in the mediated parenting plan and the parties' former annual gross incomes of $51,000 for Wife and $76,000 for Husband. From the date of trial forward, however, the child support award would be based upon Wife's current annual gross income of $71,000 and Husband's current annual gross income of $78,400. Husband requested that he be allowed to claim one of the children for tax exemption purposes on his federal income tax return. The trial court denied this request, explaining that the Child Support Guidelines assumed that the primary residential parent would claim the children as tax exemptions.

As evidenced by order entered March 24, 2014, the trial court determined that Husband owed a child support arrearage in the amount of $10,920 for the period from the date of filing the complaint for divorce to the date of trial. Consequently, the court ordered that Husband pay this arrearage at the rate of $200 per month until it was paid in full. The court also set current child support at $572 per month. Two child support worksheets were attached to the trial court's order. The first worksheet reflected that retroactive child support was assessed at $752 per month pursuant to the worksheet calculation, utilizing a gross annual income of $51,000 for Wife and $76,000 for Husband. The second worksheet established the current support award of $572 per month based on Wife's gross annual income of $71,000 and Husband's gross annual income of $78,400. Husband timely appealed.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in its division of the parties' Elan credit card debt.

2. Whether the trial court erred in allowing Wife to claim both children as tax exemptions for federal income tax purposes.

3. Whether the trial court erred in its calculation of the child support arrearage owed by Husband.

## III. Standard of Review

Our Supreme Court has explained that marital debts are "subject to equitable division in the same manner as marital property." *See Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). In a case involving the proper distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

3

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

We review a trial court's allocation of federal income tax exemptions for minor children under an abuse of discretion standard. *See Chandler v. Chandler,* No. W2006-00493-COA-R3-CV, 2007 WL 1840818 at *9 (Tenn. Ct. App. June 28, 2007). The decision regarding allocation of the exemption "is discretionary and should rest on facts of the particular case." *Id* . at *9 (citing *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993)); s*ee also Burnett v. Burnett*, No. W2007-00038-COA-R3-CV, 2008 WL 727579 at *11 (Tenn. Ct. App. Mar. 19, 2008).

### IV. Division of Elan Credit Card Debt

Husband asserts that the trial court erred in its division of the parties' Elan credit card debt. The trial court initially ruled from the bench that this debt would be assessed solely to Wife. Following an exchange with Wife's counsel regarding the substance of Wife's testimony, however, the court changed its ruling. Husband asserts that the trial court's ruling dividing this debt equally between the parties was based only on the representation of Wife's counsel and is not supported by the evidence. We disagree.

4

Wife's testimony on this issue was as follows:

Wife's counsel: And next we have three through eighteen [on the list of liabilities].[1] Are these all credit cards used by you and/or your husband?

Wife: Yes.

Husband's counsel: Excuse me. Three through where?

Wife's counsel: Eighteen.

Husband's counsel: That's different than what you provided to me. Thank you.

Wife's counsel: So the Elan credit card, that was used during the marriage –

Wife: Yes.

Wife's counsel: – for yourself, your husband and your children?

Wife: Yes.

Husband's counsel: I want to object to the leading, Your Honor.

The court: Try not to lead.

Wife's counsel: I was just trying to push through.

The court: Although, it would help us to hurry through it.

Wife's counsel: I was just trying to push through. I apologize, Your Honor.

Wife: All credit cards were used during the marriage for all parties.

Husband's testimony regarding this issue was simply that he could not remember when he learned about the Elan credit card debt. When asked whether it was after the divorce was filed, he replied, "No." Husband stated that he did not receive any benefit

---

[1] We note that the Elan credit card debt was designated as number three on the list of liabilities from which Wife was testifying, which was entered as Exhibit 1.

from that debt to his knowledge and that he never possessed or used the respective card. Husband admitted, however, that he received a copy of the Elan credit card statement as well as all of the credit card statements during discovery in this matter. Husband did not specifically dispute Wife's testimony that all of the credit cards were utilized for the benefit of the parties during the marriage.

As our Supreme Court has explained:

"Marital debt" is not defined by any Tennessee statute and has never before been defined by this Court. However, marital debts are subject to equitable division in the same manner as marital property. *Cutsinger v. Cutsinger,* 917 S.W.2d 238, 243 (Tenn. Ct. App. 1995); *Mondelli,* 780 S.W.2d at 773. We take this opportunity to define "marital debt" consistent with the definition of "marital property" in Tennessee. "Marital property" is defined by statute as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing a complaint for divorce . . . ." Tenn. Code Ann. § 36-4-121(b)(1)(A) (2001). We now hold that "marital debts" are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing.

*Alford*, 120 S.W.3d at 813. In the case at bar, there is no dispute that the Elan credit card debt was incurred during the course of the marriage and before the date of the final divorce hearing. Therefore, pursuant to the above definition, it is a marital debt subject to equitable division. Upon our careful review of the record in this cause, we conclude that the trial court did not err in equitably dividing this debt between the parties. Furthermore, the trial court's distribution of this debt was not based solely upon the representation of Wife's counsel, as Husband claims, but rather was based upon the testimony of the parties, as demonstrated above. We conclude that Husband's first issue is without merit.

V. Federal Tax Exemption for One Child

Husband asserts that the trial court erred in failing to allow him to claim one child as an exemption for federal income tax purposes. Wife contends that the trial court properly interpreted the Tennessee Child Support Guidelines as containing an assumption in the child support worksheet calculation that the primary residential parent will claim the tax exemptions for the children. Concerning this issue, we agree with Wife and the trial court. The Tennessee Child Support Guidelines expressly provide that the child support schedule is based upon the assumption that "the primary residential parent claims the tax exemptions for the child." *See* Tenn. Comp. R. & Regs. 1240-02-04-.03.

6

Pursuant to this authority, the trial court allocated both tax exemptions to Wife. We must review this decision utilizing an abuse of discretion standard. *See Chandler,* 2007 WL 1840818 at *9. Our Supreme Court has explained the abuse of discretion standard of review as follows:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland,* 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

> Regarding the allocation of tax exemptions, this Court has previously explained:

> The Internal Revenue Code automatically assigns tax exemptions for dependent children to the primary residential parent. I.R.C. § 152(e) (West 2005). Accordingly, the Child Support Guidelines for Tennessee assume, but do not require, that the primary residential parent will claim the exemption for the parties' children. Tenn. Comp. R. & Regs. 1240-2-4-.03(6)(b)(2)(ii) (2006); *see also Eaves v. Eaves,* No. E2006-02185-COA-R3-CV, 2007 WL 4224715, *8 (Tenn. Ct. App. Nov. 30, 2007). Such a parent can execute a release of the exemption, which allows the alternate residential parent to claim the exemption. I.R.C. § 152(e)(2). Furthermore, the trial court is permitted to order the primary residential parent to execute such a release. *Barabas v. Rogers,* 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993) (citing *Hooper v. Hooper,* C.A. No. 1130, 1988 WL 10082 (Tenn. Ct. App. Feb. 9, 1988)).

*Burnett,* 2008 WL 727579 at *10.

The *Burnett* Court then analyzed the trial court's discretionary decision to allocate the tax exemption to the primary residential parent as follows:

> At trial, Husband argued that he should be awarded the tax exemptions for

the parties' children, and Wife's counsel conceded that Husband was "the person more in need of [the tax exemptions]." Nevertheless, in its written order, the trial court awarded the tax exemptions to Wife. The trial court did not state its reasons for doing so.

\* \* \*

Husband makes substantial income and Wife has little or no income except the spousal support she receives from Husband. At trial, counsel for Wife conceded that the exemptions should be awarded to Husband. Under these circumstances, despite the fact that Wife is the primary residential parent, we must conclude that the trial court abused its discretion in awarding the federal tax exemptions to Wife. The trial court's ruling on this issue is reversed.

*Burnett*, 2008 WL 727579 at \*10. The *Burnett* Court cited with approval *Travis v. Travis,* No. E2000-01043-COA-R3-CV, 2001 WL 261543 at \*1-5 (Tenn. Ct. App. Mar. 16, 2001). In *Travis*, this Court held that the husband should be granted the tax exemptions for the children, despite the fact that he was not named primary residential parent. *Id*. at \*5. This holding was based on the husband's much higher income, which resulted in the exemption being of greater benefit to him, as well as the requirement under the divorce decree that the husband would be responsible for substantial child support. *Id*.

In contrast to *Burnett* and *Travis*, we conclude that, considering the circumstances of this case, the trial court did not abuse its discretion in allocating the tax exemptions for both children to Wife. The evidence established that the parties' respective incomes were not significantly different. Furthermore, Husband presented no evidence that Wife agreed to allow him to claim the tax exemption for one child or that he would receive a much greater benefit from doing so. Therefore, we find no error in the trial court's decision to allocate both tax exemptions to Wife as primary residential parent based on the assumption contained in the Guidelines.

## VI. Child Support Arrearage

Finally, Husband contends that the trial court erred in its calculation of the child support arrearage he owed from the time of the filing of the complaint to the date of trial. Husband asserts that the time span between Wife's filing of the complaint in December 2012 and trial in January 2014 was only thirteen months. Husband argues that if the child support award of $572 per month is multiplied by thirteen months, the resulting arrearage amount is only $7,436.

The fallacy in Husband's argument is that the trial court actually awarded child support of $752 per month,[2] retroactive to the date of the complaint's filing. Therefore, if the monthly amount of $752 per month is multiplied by thirteen months, the arrearage amount would total $9,776. We conclude that the trial court's award of retroactive child support should be modified to reflect the amount of $9,776 rather than $10,920. We otherwise affirm the award of retroactive support.

## VII. Attorney's Fees on Appeal

In her brief's conclusion, Wife requested an award of attorney's fees on appeal. We note, however, that Wife did not raise this as an issue in her statement of the issues. As our Supreme Court has elucidated:

> Appellate review is generally limited to the issues that have been presented for review. Tenn. R. App. P. 13(b); *State v. Bledsoe,* 226 S.W.3d 349, 353 (Tenn. 2007). Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof." Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012). Because Wife did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived. *See Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011).

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment, except that we modify the award of retroactive child support to the amount of $9,776. Costs on appeal are assessed to the appellant, Brandon K. Culpepper. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] The $572 amount was to be from the date of trial prospectively.

9