IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session

## JOANNE ACKERMAN v. SCOTT ACKERMAN

**Appeal from the Circuit Court for Sequatchie County**
**No. 17-CV-55      Justin C. Angel, Judge**

_____

### No. M2019-00211-COA-R3-CV

_____

In this divorce appeal, Wife argues that the trial court erred in dividing the equity in the marital home and in calculating her net award. We find no error in the trial court's division of the equity in the marital home, but we have determined that the court erred in its calculation of the net award by crediting the marital debt against Wife twice. We, therefore, affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Michael Keith Davis, Dunlap, Tennessee, for the appellant, Joanne Ackerman.

Samuel F. Hudson, Dunlap, Tennessee, for the appellee, Scott Ackerman.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Scott Ackerman ("Husband") and Joanne Ackerman ("Wife") married in November 2011 while living in Florida. No children were born of the marriage, but both parties had children from previous relationships. Husband and Wife both accumulated funds in retirement accounts while working for the Florida Department of Corrections.

Approximately four years after their marriage, Husband and Wife decided to move to Tennessee. They both liquidated their retirement accounts. After taxes, Husband received $87,756.17 out of his account valued at $109,695.21. Wife's account, with a gross value of $56,768.56, paid her $45,414.85 after taxes. With their combined funds,

Husband and Wife purchased unimproved land, cleared the property, and installed a new mobile home. Both obtained employment in Sequatchie County.

Unfortunately, problems arose in the marriage approximately one year after the parties moved into their new home, and Wife decided to relocate to Florida with her children. She and the children moved back to Florida in September 2016 and did not return to Tennessee. Husband continued to reside in the marital home. On September 19, 2016, Husband obtained a loan for $25,000.00 in his name using the marital home as security. (The use of the loan proceeds was an issue at trial.)

Husband filed for divorce in March 2017. The case went to trial on November 26, 2018, on stipulated grounds for divorce, and both parties testified. The parties agreed that the marital home was worth $107,000.00. The balance due on the loan was $22,972.03. Thus, the value of the remaining equity in the home was $84,027.97. Wife requested that the marital home be sold and the proceeds divided equally between the parties. Husband argued that he should be awarded 65.9% and Wife should be awarded 34.1% of the equity in the marital home based upon their respective contributions toward the purchase. He further asserted that Wife should be responsible for the entire balance of the loan, whereas she argued that the parties should be equally responsible for the debt.

Assessing the statutory factors (discussed below), the trial court found factor five most significant in that "Husband contributed a substantially greater percentage of funds to the parties' purchase of the real property and mobile home . . . ." The court awarded the marital home to Husband and ordered that the outstanding debt on the loan be equally divided between the parties. Wife was awarded 25% of the net equity in the marital home ($21,006.99) minus her one-half of the marital debt ($11,486.02), resulting in a net recovery of $9,520.97.

Wife appeals, arguing that the trial court erred in its determination of her share of the equity in the marital home and in calculating her net award.

STANDARD OF REVIEW

A trial court has a great deal of discretion in determining the manner in which it divides marital property, and an appellate court will generally defer to a trial court's decision regarding what is equitable unless that decision is inconsistent with the factors set out in Tenn. Code Ann. § 36-4-121(c) or the evidence preponderates against the division. *Jolly v. Jolly*, 130 S.W.3d 783, 785-86 (Tenn. 2004). Appellate courts "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen-Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)).

ANALYSIS

A trial court's division of marital property "involves the distribution of both marital assets and marital debts." *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *see also Pollan v. Pollan*, No. M2011-01896-COA-R3-CV, 2012 WL 2582336, at *3 (Tenn. Ct. App. July 3, 2012). Once a trial court has classified divorcing parties' property as marital or separate, the court is tasked with equitably dividing the marital property between the parties "without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1); *see also Larsen-Ball*, 301 S.W.3d at 231. An equitable division of property "is not necessarily an equal one." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988); *see also Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) ("A division of marital property is not rendered inequitable simply because it is not precisely equal or because each party did not receive a share of every piece of marital property.") (citations omitted). The division of marital property "is not a mechanical process" but rather is guided by the factors set forth in Tenn. Code Ann. § 36-4-121(c). *Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998).

A similar analysis applies with respect to marital debt. *See Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). Our Supreme Court has defined marital debt as "all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Id.* The following four factors are to be used by trial courts as guidelines in the equitable distribution of marital debt: "(1) the debt's purpose; (2) which party incurred the debt; (3) which party benefitted from incurring the debt; and (4) which party is best able to repay the debt." *Id.* at 814 (citing *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)).

I. Equity in marital home.

Wife argues that the trial court failed to make an equitable division of the marital assets when it awarded her only 25% of the equity in the marital home. Tennessee Code Annotated section 36-4-121(c) sets out the factors for the court to consider in making an equitable division of the marital property.

The trial court set forth its analysis of the statutory factors as follows:

(1) The duration of the marriage: the eight (8) year marriage was of a moderate length, and the Court placed little emphasis on this factor;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties: the parties are close in age to each other, and they appear to have similar earning capabilities, and the Court places little weight on this factor;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party:  no proof was presented on this factor, and the Court gives it no weight to it [sic];

(4) The relative ability of each party for future acquisitions of capital assets and income:  both parties are in extremely poor financial health, and this factor does not favor either party;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role:  Husband contributed a substantially greater percentage of funds to the parties' purchase of the real property and mobile home in Tennessee, and the Court affords great weight to this factor.  The court also considered Wife's testimony that she was the primary homemaker, even though both parties worked.  The Court considered Wife's additional contribution, but the Court gives Husband's financial contributions more weight;

(6) The value of the separate property of each party: although there was some testimony that Wife owned some assets at the time of the parties' marriage, the Court affords this factor little weight;

(7) The estate of each party at the time of the marriage:  this factor does not favor either party;

(8) The economic circumstances of each party at the time the division of property is to become effective:  based on the Court's distribution of assets and liabilities, this factor does not [favor] either party;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset:  this factor is not applicable;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable.  Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence:  not applicable;

(11) The amount of social security benefits available to each spouse:  this factor is not applicable;

(12) Such other factors as are necessary to consider the equities between the parties:  [there] were not any additional factors considered by the Court that were necessary to consider the equities between the parties.

A. Contributions of each party.

In arguing that the trial court erred in awarding her only 25% of the equity in the marital home, Wife asserts that the court misapplied the statutory factors. According to Wife, the trial court failed to give adequate weight to her financial condition at the time of the marriage, her more stable employment history, her undisputed contributions as a homemaker, and Husband's failure to preserve the parties' assets and credit after the separation. Most of these issues were disputed at trial. The trial court acknowledged that Wife was in a better financial condition at the time of the parties' marriage, but Wife argues that the court did not give this fact sufficient weight. Wife testified that she owned a duplex and two vehicles when the parties married. On cross-examination, however, she admitted that the duplex was in foreclosure prior to the parties' marriage and that one of the vehicles was eventually repossessed. Husband testified that, during the parties' relationship, he owed the Internal Revenue Service ("IRS") around $20,000 and that their joint account was garnished, but cross-examination of Wife revealed that the IRS garnishment occurred before the parties' marriage.

As to the evidence regarding the parties' employment histories, Wife argues that she was "essentially" employed throughout the marriage whereas Husband was not. Both parties were employed with the Florida Department of Corrections, Husband since 2001, Wife since 2006. Husband lost his job with the State of Florida and was unemployed for a period of about three months, during which time he received no income. Wife was injured for a period of months and received some income while she was unable to work. After the parties moved to Tennessee, Wife was able to obtain employment sooner than Husband.

Wife further asserts that she contributed a greater percentage of the parties' income during the marriage because Husband had to pay child support for his two children. She testified that, when they lived in Florida, she brought home about $1000 and Husband brought home about $800 every two weeks because child support was deducted from his paycheck. At the time of the parties' separation, Wife testified, Husband was only bringing home $386 and she was bringing home $900 every two weeks. Wife further testified that she performed most of the household chores and was responsible for paying the bills. Husband acknowledged what he characterized as a slight disparity in the parties' income but emphasized that Wife's additional financial contribution was necessary because she had two children from a previous relationship living in their home. Husband also argues that much of the household work Wife did was in her role as mother to the two children.

The proof regarding Husband's alleged failure to protect the parties' assets was disputed. There was evidence of both parties' irresponsible actions with respect to paying bills. We find it unnecessary to detail all of the evidence and the parties' competing arguments on this subject.

In its order, the trial court stated that it gave "little weight" to Wife's greater assets at the time of the marriage. As to Wife's employment history and contributions as a homemaker, the court considered Wife's role as the primary homemaker and the fact that both parties worked. The court afforded "great weight" to Husband's contribution of a "substantially greater percentage of funds" from his retirement account to the purchase of the real property. On the subject of dissipation of assets, the court noted Wife's testimony regarding the dilapidated state of the marital home when she returned for a visit to Tennessee after the parties' separation.

Because "issues of credibility and weight of testimony are involved, we afford considerable deference to the trial court's findings of fact." *Larsen-Ball*, 301 S.W.3d at 235. We find no error in the trial court's weighing of the evidence with respect to the parties' respective contributions to the "acquisition, preservation, appreciation, depreciation or dissipation" of the marital property (factor five). Tenn. Code Ann. § 36-4-121(c)(5)(A).

B. Time horizon.

In a related argument, Wife asserts that the trial court erred in considering only the year and a half when the parties lived in the marital home when determining the weight to give to their respective non-economic contributions. In particular, Wife relies upon the following statement made by the trial court during its oral ruling: "The Court does take note that it was a seven-year marriage and I was focusing in on the year and a half of being at the property just to figure out how much of the non-economic contribution that I'm to consider."

The only substantial piece of marital property subject to division by the trial court was the marital home and, pursuant to Tenn. Code Ann. § 36-4-121(c)(5)(A), the court must consider the parties' contributions to the acquisition, preservation, appreciation, and dissipation of the marital property, including certain non-economic contributions. Because the parties lived in the house during a period of a year and a half, the trial court did not err in focusing on that period in determining the weight to be afforded to the parties' respective non-economic contributions. The trial court properly considered the entirety of the parties' marriage in assessing the overall impact of the statutory factors.

II. Net recovery for Wife.

Wife next argues that the trial court erred in its calculation of the monetary amount awarded to her because it assigned to her double the amount of the debt associated with the marital home.

In its final order, the trial court made the following pertinent findings regarding the parties' use of the proceeds from the $25,000 loan taken out by Husband at the time of the separation:

> While Husband testified that Wife received the funds in exchange for her interest in the marital property and to assist her with relocating to Florida, Wife testified that only a portion of the funds were used to relocate and the remaining funds were used to pay marital debts. As of the date of the hearing, the balance of the mortgage was $22,972.03.

Later in the order, the trial court ordered that the balance of this loan "shall be equally divided between the parties, with each party responsible for $11,486.02." The equity in the marital home was $84,027.97.[1] With respect to Wife's share of the marital home, the trial court ordered:

> Wife is awarded 25% of the net equity in the real property and mobile home, or $21,006.99 ($84,027.97 x 0.25). However, Wife's marital interest in the real property and mobile home shall be offset by her one-half (1/2) share of the aforementioned mortgage and Wife's net share of the marital equity shall be reduced to $9,520.97 ($21,006.99 - $11,486.02).

Thus, Wife received a net award of $9,520.97.

We find that the trial court erred in its calculation of Wife's award. By definition,[2] the amount of the loan related to the marital home has been subtracted from the value of the home to arrive at the amount of the parties' equity. Thus, when the trial court subtracted the loan amount from Wife's share of the equity, the court charged one half of the loan amount against Wife a second time. Wife's net award should be $21,006.99.

---

[1] This figure represents the value of the marital home ($107,000.00) minus the loan balance ($22,972.03).

[2] The applicable definition of "equity" states: "The amount by which the value of or an interest in property exceeds secured claims or liens; the difference between the value of the property and all encumbrances on it." BLACK'S LAW DICTIONARY (11th ed. 2019).

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed equally against both parties, for which execution may issue if necessary.


_____
ANDY D. BENNETT, JUDGE